Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| RENÉ GARCÍA HOED<br>Demandante-Apelante<br><br><br>v.<br><br><br>CONSEJO DE TITULARES DEL<br>CONDOMINIO DOS MARINAS I<br>Demandado-Apelado | TA2025AP00318 | *Apelación*<br>procedente del<br>Tribunal de<br>Primera Instancia<br>Sala de Fajardo<br><br>Civil Núm.<br>FA2020CV00293<br><br>Sobre:<br>Incumplimiento<br>de Contrato<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Adames Soto, la Jueza Mateu Meléndez y el Juez Marrero Guerrero

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de junio de 2026.

Comparece el señor René García Hoed (señor García Hoed o apelante), a través de recurso de *Apelación,* solicitando que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI), el 17 de julio de 2025. Mediante el referido dictamen, el foro primario acogió una moción de sentencia sumaria presentada por el Consejo de Titulares del Condominio Dos Marinas I (Consejo de Titulares o apelado), por tanto, desestimó con perjuicio la causa de acción por incumplimiento de contrato instada por el apelante.

Por los fundamentos que expresaremos, *confirmamos.*

**I. Resumen del tracto procesal**

El señor García Hoed instó *Demanda* contra el Consejo de Titulares[1] el 10 de marzo de 2020. Alegó que: a la fecha de los hechos, años 2017-2019, poseía licencia vigente de ajustador público, 3000166288, aprobada por la Oficina del Comisionado de Seguros; de conformidad al Código de

---

[1] En la *Demanda* fueron incluidos múltiples demandados, pero solo subsiste la reclamación en contra del Consejo de Titulares.

Seguros, *infra*, el Consejo de Titulares lo contrató para representarlo ante su asegurador, Mapfre Praico Insurance Company (Mapfre), "en el ajuste de las pérdidas sufridas por el Condominio Dos Marinas I como consecuencia del paso del huracán María por Puerto Rico"[2]; rindió los servicios correspondientes, no obstante, se produjo un "golpe de estado a la Junta de Directores"[3], a partir de lo cual no se le pagó lo debido. Adujo haber acordado con el Consejo de Titulares ajustar todos los daños al edificio, a cambio, se le pagaría un diez por ciento (10%) de comisión del neto recibido, incluyendo un diez por ciento (10%) de pago realizado por Mapfre por recobro en beneficio de la derrama. En lo que aquí nos concierne, reclamó el pago de la comisión por servicios profesionales prestado, por el ajuste y gestión bajo la cubierta de derrama.

En respuesta, el Consejo de Titulares presentó *Contestación a Demanda*. Luego de admitir algunas alegaciones y negar otras, aseveró de manera repetida que el apelante "no ha producido prueba documental, real, material o pericial que sustente los hechos, negligencia y daños que afirma en [sus] alegaciones"[4], tras lo cual alzó defensas afirmativas.

Luego del TPI atender una cantidad considerable de asuntos (solicitudes de desestimación por varios de los codemandados, desistimiento, sentencias parciales, entre otros), el 30 de mayo de 2024, el Consejo de Titulares presentó una *Moción Solicitando Desestimación y/o Sentencia Sumaria Final*.[5] En su escrito, el Consejo de Titulares enumeró cuarenta y seis hechos que identificó como esenciales y no controvertidos, aludiendo a la prueba documental que, arguyó, los sostenía, y anejándola al expediente del Tribunal. Entonces, luego de exponer el derecho que juzgó pertinente, argumentó sobre las razones por las cuales procedía el dictamen sumario. En específico, arguyó que: el apelante no contaba con

---

[2] *Demanda*, Entrada Núm. 1 de SUMAC, pág. 6.
[3] *Demanda*, Entrada Núm. 1 de SUMAC, pág. 7.
[4] *Contestación a Demanda*, Entrada Núm. 16 de SUMAC, pág. 4.
[5] *Moción Solicitando Desestimación y/o Sentencia Sumaria Final*, Entrada Núm. 217 de SUMAC.

una licencia activa de ajustador público para las fechas que ocurrieron los hechos, por lo que no estaba autorizado a ejercer dichas funciones; que el *Contrato de Servicios Profesionales* original no contenía cláusula alguna que encomendara al señor García la función de gestionar la reclamación de la derrama; los alegados contratos suscritos entre el apelante y el señor Jiménez, entonces presidente del Consejo de Titulares y la Junta de Directores del Condominio, incumplían con las exigencias del Código de Seguros de Puerto Rico, *infra*; dichos contratos eran nulos por no haber sido autorizada su aprobación por el Consejo de Titulares en una asamblea debidamente convocada, en contravención a la Ley de Condominios; la Ing. Yanira Orsini, corredora de seguros de Dos Marinas I, fue quien tramitó la reclamación de la derrama ante Mapfre.

El foro apelado le concedió un término de veinte (20) días al aquí peticionario para que fijara su posición.

A raíz de ello, el 20 de junio de 2024, el señor García Hoed presentó una *Moción en Oposición a Moción de Desestimación y/o de Sentencia Sumaria y en Solicitud que se Dicte Sentencia Sumaria a favor del Demandante*.[6] Aunque sin atenerse al orden de hechos propuestos como incontrovertidos por el Consejo de Titulares en la moción de sentencia sumaria, en su oposición a sentencia sumaria el peticionario también incluyó una lista de hechos que identificó como incontrovertidos y aludió a la prueba documental que los sostenía, anejándola. En específico, incluyó como primer anejo copia de una *Orden* suscrita por la Oficina del Comisionado de Seguros de Puerto Rico, del 9 de diciembre de 2019, en la cual se expresó que "el Condominio [recurrido] y el Ajustador Público [peticionario] pactaron que este último trabajaría los estimados de daños para el exterior, la estructura y las áreas comunes del Condominio, así

---

[6] *Moción en Oposición a Moción de Desestimación y/o de Sentencia Sumaria y en Solicitud que se Dicte Sentencia Sumaria a favor del Demandante*, Entrada Núm. 220 de SUMAC.

como todo lo referente a la cubierta de pérdida por derrama".[7] Además, se estableció en dicha *Orden* que "el 22 de diciembre de 2017, la reclamación de la derrama fue presentada personalmente por el Ajustador Público [peticionario] al Asegurador. El Ajustador Público [peticionario] acompañó evidencia de las reparaciones de emergencia que estaba incurriendo el Condominio [recurrido]."[8] Es decir, promovió el peticionario a través de esta moción que, por virtud del contenido de dicha *Orden*, surgía con claridad que era un ajustador público autorizado a la fecha de los hechos y que había pactado con los recurridos trabajar la pérdida por derrama. A renglón seguido, esta parte siguió citando profusamente la referida *Orden* para establecer la obligación acordada por el Condominio con él como ajustador público para efectos de reclamar la derrama y que fue él quien presentó la reclamación de derrama ante Mapfre, lo que resultó en que dicha aseguradora pagara lo reclamado. Sostuvo que el *Contrato de Servicios Profesionales* original presentado por el Consejo de Titulares en su moción dispositiva no fue el otorgado entre las partes.

Más adelante, el 20 de junio de 2024, el Consejo de Titulares presentó una *Moción Solicitando se Dicte Sentencia Sumaria Final sin Oposición de la Parte Demandante*. El 21 de junio de 2024, fue acogida dicha *Moción* por el TPI mediante *Orden*, por lo que la controversia se entendió como sometida para adjudicación.

Posteriormente, el 24 de septiembre de 2024, se llevó a cabo una vista argumentativa acerca de la moción dispositiva pendiente por resolver y su oposición, en la cual las partes tuvieron oportunidad de argumentar sus posiciones. Sobre la aprobación del contrato de servicios del apelante, se indicó por la representación legal de este que existe prueba de ello a través de la *Minuta* en la que se aprobó la derrama del 5 de noviembre de 2017. Por su parte, el apelado presentó el *Contrato de Servicios*

---

[7] *Orden*, Entrada Núm. 220 de SUMAC, Exhibit 1, pág. 2.
[8] *Orden*, Entrada Núm. 220 de SUMAC, Exhibit 1, pág. 7.

*Profesionales* original para sostener que no contenía disposición alguna sobre la gestión de la reclamación de la derrama por el apelante. En definitiva, el TPI dispuso que "el licenciado Prieto Batista habrá de enviar al abogado de la parte demandada [apelado], en o antes del viernes, copia de las licencias vigente al momento de la contratación y llevados los trabajos en controversia".[9]

Por ello, el 3 de octubre de 2024, el señor García Hoed presentó una *Moción Informativa y en Cumplimiento de Orden*, aseverando haber enviado a la oficina de la representación legal del apelado "copia de todos los certificados y certificaciones expedidas por la oficina del Comisionado de Seguros de Puerto Rico que autorizan al Sr. Rene García Hoed a ejercer la profesión de ajustador publico *[sic]* en Puerto Rico desde septiembre de 2017 hasta el año 2026".[10]

El 17 de octubre de 2024, el Consejo de Titulares presentó una *Oposición a "Moción Informativa" en la Entrada Núm. 236*. Arguyó que las certificaciones enviadas por el apelante a través de la *Moción* mencionada en el párrafo que antecede fueron presentadas de manera tardía. En específico, adujo que "[l]a parte demandante presentó otras certificaciones como ajustador durante todo el descubrimiento de prueba y no es hasta el día de la vista argumentativa, el 24 de septiembre de 2024, que presenta una *[sic]* nuevas certificaciones".[11]

A su vez, el 21 de octubre de 2024, el apelante presentó una *Réplica a Oposición a ¨Moción Informativa¨*. Insistió que estaba autorizado a ejercer como ajustador público al realizar las funciones de ajuste de las pérdidas sufridas por el Condominio.

El 22 de octubre de 2024, el Consejo de Titulares presentó una *Moción Suplementando y Reiterando Solicitud de Desestimación y/o*

---

[9] *Minuta*, Entrada Núm. 235 de SUMAC, pág. 2.
[10] *Moción Informativa y en Cumplimiento de Orden*, Entrada Núm. 236 de SUMAC, pág. 1.
[11] *Oposición a "Moción Informativa" en la Entrada Núm. 236*, Entrada Núm. 238 de SUMAC, pág. 1.

*Sentencia Sumaria en la Entrada Núm. 217*. Según ya venía esgrimiendo, sostuvo que los contratos suscritos por el señor García Hoed no contenían cláusula alguna que indicara que había sido contratado para tramitar la reclamación por la derrama. Además, expuso que la versión original del *Contrato de Servicios Profesionales* era idéntica a su segunda versión, excepto que los blancos en el original estaban vacíos y en el segundo estaban llenos. Sobre el mismo asunto abundó que, el contrato original tenía la misma fecha del segundo contrato y contenía la firma de las partes. El Consejo de Titulares argumentó que, para la fecha en que el contrato fue firmado, el señor García Hoed no había comenzado su evaluación de los daños del Condominio, por lo que no tenía forma de conocer la cantidad a ser reclamada a Mapfre. Por lo tanto, concluyó que la ¨segunda versión del contrato se llenó en una fecha posterior a que se realizara la recopilación de la información sobre la derrama, se presentara la reclamación de la derrama ante MAPFRE y se cobrara la misma¨.[12]

Es así como, el 17 de julio de 2025, el TPI emitió la *Sentencia* cuya revocación nos solicita el señor García Hoed, acogiendo la moción de sentencia sumaria presentada por el Consejo de Titulares, por tanto, desestimando la causa de acción que el primero instó contra el segundo. Al así decidir, enumeró sesenta y nueve hechos como incontrovertidos para luego exponer el derecho pertinente y entonces concluir lo siguiente: que el original del contrato de servicios profesionales suscrito por las partes no contenía disposición alguna respecto a que el señor García Hoed tramitara la reclamación de la derrama; el primer contrato sobre Servicios Profesionales, y el segundo contrato sobre lo mismo, suplido posteriormente mediante moción, son completamente distintos, radicando la diferencia en que en el segundo fue que se insertó mención a derrama y cantidad de esta; ninguno de los demás contratos contenía provisión para

---

[12] *Moción Suplementando y Reiterando Solicitud de Desestimación y/o Sentencia Sumaria en la Entrada Núm. 217*, Entrada 241 de SUMAC, pág. 3.

que el señor García Hoed tramitara la derrama; los referidos contratos no fueron aprobados por el Consejo de Titulares, contrario a la Ley de Condominios, *infra*; el Código de Seguros, *infra*, requiere precisar en los contratos los servicios a ser contratados; el señor García Hoed no contaba con licencia autorizada como ajustador público para el 28 de septiembre de 2018.

Luego de que el señor García Hoed instara una *Moción de Reconsideración y en Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales*, que resultó denegada, acudió ante nosotros mediante recurso de *Apelación,* señalando la comisión de los siguientes errores:

> **PRIMER ERROR:** Erró el Honorable Tribunal de Primera Instancia al determinar que el Sr. García Hoed no estaba autorizado a ejercer la profesión de ajustador público. Razón por la cual denegó el pago de sus honorarios por los servicios profesionales que rindió en la reclamación de póliza correspondiente a la derrama de Condominio Dos Marinas I.
>
> **SEGUNDO ERROR:** Erró el Honorable Tribunal de Primera Instancia al determinar que la Ing. Yanira Orsini, corredora de seguros, fue la responsable de efectuar el trabajo de ajustador en la evaluación de los daños de cada apartamento que constituyen el Condominio Dos Marinas I para el reclamo de la cubierta de la derrama.
>
> **TERCER ERROR:** Erró el Honorable Tribunal de Primera Instancia al confundir al profesional corredor de seguros, del profesional ajustador público de seguros, siendo profesiones diferentes con distintos requisitos, licencias y autorizaciones para que se puedan ejercer.[13]
>
> **CUARTO ERROR:** Erró el Honorable Tribunal de Primera Instancia al no reconocer y darle deferencia a lo resuelto por la Oficina del Comisionado de Seguros de Puerto Rico en el caso núm. CM-219-84.

El Consejo de Titulares también acudió ante nosotros, mediante *Alegato en oposición a apelación.*[14]

---

[13] Aclaramos que, en la sección de Discusión de los Errores Señalados de la *Apelación*, el tercer error señalado es distinto al anteriormente expuesto. Dicho error lee como sigue: Erro *[sic]* el Honorable Tribunal de Primera Instancia al concluir que del documento titulado "Contrato de Servicios Profesionales" contiene encasillados en blanco, está firmado en tinta azul y no contiene cláusula alguna que incluya la reclamación de la derrama. Tomaremos la primera redacción de dicho error en consideración.

[14] Mediante una moción posterior, el Consejo de Titulares nos solicitó autorización para someter la transcripción de la vista argumentativa sobre la moción de sentencia sumaria y su oposición. Denegamos tal solicitud, en tanto, solo examinaremos la documentación que obra en autos. Las argumentaciones no son prueba.

## II. Exposición de Derecho

### a. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal provisto por la Regla 36 de las Reglas de Procedimiento Civil de 2009 que promueve la solución justa, rápida y económica de las controversias. 32 LPRA Ap. V, R. 36. La precitada regla permite a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020); *Rodríguez García v. UCA*, 200 DPR 929 (2018); *Roldán Flores v. M. Cuebas*, 199 DPR 664 (2018); *Rodríguez Méndez v. Laser Eye*, 195 DPR 769 (2016); *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 225 (2015); *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). Bajo tales circunstancias, lo único que queda por parte del tribunal es aplicar el derecho. *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Lugo Montalvo v. Sol Meliá Vacation Club*, supra.

Al evaluar la conveniencia de conceder el recurso, se considera como un hecho esencial y pertinente aquel que puede afectar el resultado de la reclamación según el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Por tanto, al disponer de una moción de sentencia sumaria, el tribunal necesariamente tendrá que escudriñar las alegaciones de la demanda o las defensas interpuestas para determinar si existen hechos en controversia que deban esclarecerse mediante un juicio. *León Torres v. Rivera Lebrón*, supra.

Por su parte, la Regla 36.3 de Procedimiento Civil detalla ciertos requisitos de forma con los que debe cumplir una solicitud de sentencia sumaria, al igual que su oposición. 32 LPRA Ap. V, R. 36.3. Entre estos, se encuentra la obligación de desglosar los hechos que se alega no están en controversia con referencia específica a la prueba

admisible que los sustenta. Sobre lo anterior, el Tribunal Supremo de Puerto Rico ha manifestado que la parte que solicita la sentencia sumaria tiene que establecer su derecho con claridad y tiene que demostrar que no existe controversia sustancial sobre ningún hecho material. *Quest Diagnostics v. Municipio de San Juan*, 175 DPR 994 (2009). Es decir, que no existe controversia sobre ningún componente de la causa de acción. Mientras, la parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hospital Pavía*, 168 DPR 127, 138 (2006). ¨Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la sentencia sumaria en su contra, si procede¨. *Roldán Flores v. M. Cuebas*, supra.

Se debe recordar que, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento de que su determinación puede conllevar que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón*, supra; *Mun. de Añasco v. ASES*, 188 DPR 307 (2013). La revisión que este Foro apelativo realizará de las sentencias sumarias se considera *de novo*; por lo que habremos de examinar el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia sumaria en el foro primario y llevar a cabo todas las inferencias permisibles a favor de esta. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005).

Referente al estándar de revisión apelativa sobre una solicitud de sentencia sumaria, nuestro Tribunal Supremo ha establecido que este

foro apelativo intermedio está limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario (lo cual implica que, en apelación, los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el tribunal de instancia ni esbozar nuevas teorías); (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) determinar si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas, supra.* Así las cosas, los foros apelativos están en la misma posición que los tribunales de instancia y utilizan los mismos criterios para evaluar una solicitud de sentencia sumaria. *González Meléndez v. Mun. Autónomo de San Juan,* 212 DPR 601 (2023).

### b. Obligaciones y Contratos

Los contratos son negocios jurídicos bilaterales que constituyen una de las formas de obligación. Art. 1042 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2992 (vigente al momento de los hechos); *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo*, 150 DPR 571, 581 (2000). En materia de obligaciones y contratos, se ha reconocido reiteradamente que en Puerto Rico aplica el principio de la libertad de contratación. *Guadalupe Solís v. González Durieux,* 172 DPR 676, 683 (2007); *Álvarez v. Rivera* 165 DPR 1, 17 (2005); *Arthur Young & Co.* v. *Vega III,* 136 DPR 157, 169 (1994). De acuerdo con este pilar, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Artículo 1207 del Código Civil de 1930, 31 LPRA sec. 3372; *Álvarez v. Rivera,* supra, pág. 18. Esto posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, *Fundamentos de Derecho Civil: Doctrina General del Contrato,* 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

El contrato tiene fuerza de ley entre las partes, por lo que se debe cumplir según lo pactado. Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994. Por tanto, ¨[l]a validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes¨. Artículo 1208 del Código Civil de 1930, 31 LPRA sec. 3373. Esto surge de la doctrina establecida por nuestro Tribunal Supremo de que nadie puede ir en contra de sus propios actos. *Banco Territorial y Agrícola v. Tenedores de Cédulas Hipotecarias*, 9 DPR 1 (1905).

Los contratos advienen a vida jurídica ¨desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar un servicio¨. Artículo 1206 del Código Civil de 1930, 31 LPRA sec. 3371. Además, ¨[l]os contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley¨. Artículo 1210 del Código Civil de 1930, 31 LPRA sec. 3375. En resumidas cuentas, los requisitos para que exista un contrato son los siguientes: ¨(1) Consentimiento de los contratantes[;] (2) Objeto cierto que sea materia del contrato[;] (3) Causa de la obligación que se establezca¨. Artículo 1213 del Código Civil de 1930, 31 LPRA sec. 3391. Para que haya consentimiento entre las partes contratantes, se debe manifestar ¨el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato¨. Artículo 1214 del Código Civil de 1930, 31 LPRA sec. 3401. El objeto del contrato puede ser toda cosa que no esté fuera del comercio de los hombres, incluyendo un asunto futuro o un servicio. En cuanto a los contratos onerosos, la causa es ¨la prestación o promesa de una cosa o servicio por la otra parte¨. Artículo 1226 del Código Civil de 1930, 31 LPRA sec. 3431. Con respecto a los contratos remuneratorios, la causa es ¨el servicio o beneficio que se remunera¨. *Íd.* Cuando concurran los requisitos

anteriormente discutidos, ¨[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado¨. Artículo 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

En lo concerniente al requisito de consentimiento, nuestro ordenamiento jurídico reconoce ciertas instancias en que el mismo puede estar viciado. Así, cuando el consentimiento se presta mediando error, violencia, intimidación o dolo, se reputa nulo. Artículo 1217 del Código Civil de 1930, 31 LPRA sec. 3404. Esta nulidad, sin embargo, no es del tipo tal que invalide el vínculo contractual de manera automática. *Pérez Rosa v. Morales Rosado,* 172 DPR 216 (2007). Existe nulidad absoluta de un contrato cuando el mismo cuenta con alguna imperfección que le impide producir sus propios efectos. Es decir, que un contrato es radicalmente nulo cuando carece de alguno de los elementos esenciales para su validez, o cuando es contrario a la ley, la moral o al orden público. Artículo 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Artículo 1207 del Código Civil de 1930, 31 LPRA sec. 3372.

### c. Contratos de ajustador público

El Artículo 9.331 del Código de Seguros de Puerto Rico, Ley Núm. 77 del 19 de junio de 1957, según enmendada, establece los requisitos que **todo contrato de un ajustador público con un asegurado o reclamante debe contener**:

[...] (c) **Número de licencia de ajustador público**;
(d) El siguiente título: "Contrato de Ajustador Público";
(e) Nombre completo y dirección residencial del asegurado o reclamante, nombre del asegurador y número de la póliza, si se conoce;
(f) Una descripción de la pérdida y su ubicación, si aplica;
(g) **Descripción de los servicios que se prestarán al asegurado o reclamante**, y deberá aclarar que el ajustador público no es un empleado o representante del asegurador;
(h) Firmas del ajustador público y del asegurado o reclamante;
(i) Fecha de la firma del contrato;
(j) Lenguaje que certifique que el ajustador público está en cumplimiento con las leyes de Puerto Rico; [...]
(m) El derecho del asegurado a rescindir el contrato, mediante notificación escrita enviada dentro del término de tres (3) días laborables contado a partir de la fecha en que se firmó el contrato;

(n) Deberá contener una **cláusula que indique que el asegurado reclamante tiene derecho, pero no está obligado a contratar a un ajustador público para que le asista en el proceso de ajuste de la reclamación** [...] (Énfasis provisto). 26 LPRA sec. 952b-1.

### d. Ley de Condominios de Puerto Rico

La Ley de Condominios de Puerto Rico, Ley Núm. 129 del 16 de agosto de 2020, según enmendada, impone las normas a seguir por las estructuras bajo régimen de propiedad horizontal. Con relación al asunto que nos ataña, el Artículo 48 de esta ley dispone lo siguiente:

> **El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal.** Estará integrado por todos los titulares. **Sus** resoluciones y **acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por** todos y cada uno de los titulares, ocupantes o residentes y demás **personas que se relacionen con el condominio.** (Énfasis provisto).

Además, el Artículo 63 de dicha ley expone que

> **[e]n caso de siniestro, el Consejo de Titulares mediante acuerdo de la mayoría, podrá determinar contratar una firma de profesionales para el avalúo de los daños y/o pérdidas sufridas**, tanto de las áreas comunes como dentro de los apartamentos. De la misma manera pueden acordar la manera para sufragar dichos gastos.

## III. Aplicación del Derecho a los hechos

Según se ha ilustrado en el recuento procesal, en esencia, el apelante reclama que el Consejo de Titulares incumplió su obligación de pagarle por los servicios de ajustador público que recibió, específicamente los concernientes a la mencionada derrama. Juzga que el TPI incidió al desestimar su causa de acción por cuanto: sí figuraba como ajustador público autorizado para la fecha de los hechos; la Ing. Y. Orsini era una corredora de seguros, no una ajustadora, por lo que no le correspondía el ejercicio de ajuste que se le atribuye.

Sin embargo, antes de abordar propiamente tales señalamientos, conviene que abordemos unos asuntos omitidos por el apelante en su recurso ante nosotros, que fueron planteados por el Consejo de Titulares desde la misma presentación de la petición de sentencia sumaria, y resultan suficientes en derecho para disponer de la causa de acción

presentada. Nos referimos al reiterado señalamiento de los apelados a efectos de que los acuerdos escritos de donde presuntamente surgía la obligación de pago hacia el apelante no cumplían con los requisitos que exigían dos legislaciones especiales pertinentes: 1) la Ley de Condominios, *supra,* al requerir aprobación mayoritaria previa del Consejo de Titulares para tal tipo de contratación; 2) el Código de Seguros, *supra*[15], cuyo Artículo 9.331 impone la inclusión de cláusulas específicas en la contratación de servicios por un ajustador público. Sobre tales asuntos el apelante no incluyó discusión alguna en su escrito en oposición a sentencia sumaria, tampoco en el recurso de apelación. A pesar de esquivar pronunciarse a tales efectos, lo cierto es que el examen de los referidos acuerdos revela sin dificultad el incumplimiento con la inclusión de las cláusulas exigidas en el articulado del Código de Seguros aquí citado, *supra,* y ausencia de documentación que sostenga la aprobación previa por el Consejo de Titulares.

Sobre lo mismo, una de las razones que hizo constar en su Sentencia el foro apelado para desestimar la demanda fue, precisamente, porque de los documentos contenidos en el expediente del Tribunal no surgía aprobación por el Consejo de Titulares de la contratación con el apelante para que asumiera las gestiones relativas al pago de la derrama.

Lo anterior resulta de importancia, por cuanto, aún partiendo de la premisa de que la parte apelante contara con la licencia de ajustador público vigente para la fecha en que rindió los servicios por los cuales reclama ser pagado, no pudo establecer el cumplimiento con los requerimientos que dimanan de las referidas leyes especiales. A este punto debe recordarse que, contrario a la teoría general de los contratos, existen ciertos contratos que, por disposiciones contenidas en leyes especiales

---

[15] Como ejemplo de lo dicho, véase en la *Moción Solicitando Desestimación y/o Sentencia Sumaria Final* los incisos 3 y 4 de la *Exposición de las alegaciones,* e incisos 13, 15, 17 y 18 de la *Relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes que no están de buena fe incontrovertidos.* Entrada Núm. 217 de SUMAC.

(como lo son la Ley de Condominios y el Código de Seguros), requieren el cumplimiento de unas formalidades para su validez, y el expediente del Tribunal carece de documentación que sirva para demostrar que se hubieran cumplido.

Por otra parte, cabe reconocer que la moción de sentencia sumaria instada por el Consejo de Titulares cumplió cabalmente con las exigencias de la Regla 36.3(a), 32 LPRA Ap. V, al proveer una extensa proposición de hechos incontrovertidos, debidamente enumerados, sustentados con prueba documental admisible. Entre tal documentación, extensa, se incluyó cada uno de los acuerdos escritos alcanzados por las partes, en ninguno de los cuales se incluyó la presunta obligación acordada por el Consejo de Titulares con el apelante para que este asumiera la responsabilidad del reclamo de la derrama.

Contrario a ello, la parte apelante no dio cumplimiento al claro mandato de la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, para oponerse al promovente de la sentencia sumaria, al prescindir de proveer una relación concisa y organizada con referencia a los párrafos enumerados por la parte promovente (en la moción de sentencia sumaria), con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia para impugnar los hechos propuestos como incontrovertidos.

En lugar de cumplir el apelante con los requisitos de la regla procesal citada, en su escrito en oposición a sentencia sumaria trató de establecer unos hechos, que propuso como incontrovertidos, proveyendo copia de una *Orden* emitida por la Oficina del Comisionado de Seguros, en un proceso que se estaba siguiendo allí en contra de la aseguradora del Condominio Dos Marinas I. A partir del contenido de tal *Orden*, el apelante pretendió sostener que era un ajustador público autorizado a la fecha de los hechos, y que había pactado con los recurridos reclamar el pago de la

derrama al asegurador. Sin embargo, y en reacción a ello, mediante una oportuna *Moción en oposición* instada por el Consejo de Titulares ante el TPI, se incluyó documentación que dio cuentas de que la Oficina del Comisionado de Seguros había emitido otra *Resolución enmendada* en el referido proceso, el 16 de noviembre de 2023, en la que se estableció **como un hecho en controversia** que el aquí apelante hubiese presentado la reclamación de la derrama al asegurador, (tampoco se estableció como hecho incontrovertido que el apelante tuviera vigente su licencia como ajustador a la fecha de los hechos), además de ordenar continuar el proceso administrativo allí iniciado.[16] Es decir, muy contrario a lo que afirmó el apelante ante el TPI, y que reitera ante nosotros, el proceso administrativo iniciado por la referida Oficina estaba inconcluso al momento de la presentación de la moción de sentencia sumaria, por tanto, no había un dictamen final emitido por una agencia administrativa que sirviera el propósito pretendido en la moción en oposición a sentencia sumaria.

En definitiva, los hechos propuestos como incontrovertidos en la moción de sentencia sumaria no fueron debidamente impugnados por el apelante, acertando el foro primario al identificarlos como incontrovertidos en su Sentencia. Esto incluye, entre tantos hechos, el que la aseguradora realizara el pago por concepto de derrama a cada uno de los titulares, luego de que la Junta de Directores presentara el "proof of claim", luego de aprobado debidamente en asamblea, ligados a las gestiones realizadas por la ingeniera Yanira Orsini ante dicha aseguradora. La documentación incluida por el apelante en su escrito en oposición a sentencia sumaria no subvirtió o superó el valor probatorio de la prueba documental presentada por la parte promovente de la petición de sentencia sumaria.

---

[16] Entrada Núm. 224 de SUMAC, exhibit II.

Es decir, examinada la totalidad de la documentación presentada por las partes ante la consideración del TPI, para cuya evaluación estamos en la misma posición que el foro *a quo*, nos conduce a coincidir y reproducir las determinaciones de hechos enumeradas por el TPI, junto a la aplicación del derecho que le siguió. A fin de cuentas, y como aseveró nuestro Tribunal Supremo, "la duda para impedir que se dicte sentencia sumaria no puede ser cualquiera, sino que debe ser de tal grado que permita concluir que hay una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, 178 DPR 200, págs. 213-214 (2010), y aquí no logramos apreciar tal circunstancia.

## IV. Parte dispositiva

Por los fundamentos expuestos, *confirmamos* la *Sentencia* apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones